IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-3258-RMR

GUNNISON COUNTY STOCKGROWERS' ASSOCIATION, INC., a Colorado Nonprofit Corporation; and
COLORADO CATTLEMEN'S ASSOCIATION, a Colorado Nonprofit Corporation,

      Plaintiffs,

  v.

U.S. FISH AND WILDLIFE SERVICE;
MARTHA WILLIAMS, in her official capacity as Director of the U.S. Fish and Wildlife Service;
COLORADO DIVISION OF PARKS AND WILDLIFE;
JEFF DAVIS, in his official capacity as Director of Colorado Parks and Wildlife;
ERIC ODELL, in his official capacity as Wolf Conservation Program Manager for Colorado Division of Parks and Wildlife; and
COLORADO PARKS AND WILDLIFE COMMISSION,

      Defendants.

---

## FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

---

In accordance with the Court's order, ECF No. 9, the Federal Defendants—the U.S. Fish and Wildlife Service (the "Service") and Martha Williams in her official capacity as Director of the Service—respond to Plaintiffs' request for a temporary restraining order.

### LEGAL STANDARD

The standard for deciding a motion for a temporary restraining order is the same as for a motion for preliminary injunction. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th

1

Cir. 2022); *see also Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1105–06 (D. Colo. 2021). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"; it is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008); *accord N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1245–46 (10th Cir. 2017). A party seeking a temporary restraining order must thus establish four elements: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Winter*, 555 U.S. at 20.

Three types of preliminary equitable relief are disfavored in this circuit: (1) those that alter the status quo; (2) those that are mandatory, rather than prohibitory; and (3) those that afford the movant all the relief it could recover at the end of merits proceedings. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005).

## PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

Plaintiffs are unlikely to succeed on the merits of their claim that the Service failed to act in accordance with law by renewing the cooperative agreement without preparing an environmental impact statement ("EIS"). The Service did not have to prepare an EIS under the National Environmental Policy Act ("NEPA") for its renewal decision. NEPA does not require an EIS where the agency action is non-discretionary. And under Section 6 of the Endangered Species Act ("ESA"), the Service had no discretion whether to renew its cooperative agreement with CPW. Plaintiffs' claim thus lacks merit.

NEPA provides that "[a]n agency is not required to prepare an environmental document with respect to a proposed agency action if . . . the proposed agency action is a nondiscretionary action with respect to which such agency does not have authority to take environmental factors into consideration in determining whether to take the proposed action." 42 U.S.C. § 4336(a)(4). Similarly, NEPA's implementing regulations state that "Major Federal action does not include . . . [a]ctivities that are non-discretionary and made in accordance with the agency's statutory authority." 40 C.F.R. § 1508.1(q)(1)(ii).

The action at issue here is the Service's renewal of CPW's cooperative agreement. That action is governed by Section 6(c) of the ESA. It sets out standards for the Service's review of the request, but if the renewal request demonstrates that the State continues to maintain an adequate and active conservation program, the Service has no discretion: it must renew the agreement.

Section 6(c) provides that the Secretary of the Interior, here acting through the Service, "shall make a determination whether" the state's "program for the conservation of endangered species and threatened species" "is in accordance with this chapter." 16 U.S.C. § 1535(c)(1). "Unless he determines, pursuant to this paragraph, that the State program is not in accordance with this chapter, he *shall enter into a cooperative agreement with the State* for the purpose of assisting in implementation of the State program." *Id.* (emphasis added). In other words, if CPW's program for the conservation of endangered species and threatened species is "adequate and active," as defined in Section 6, the Service must enter into the cooperative agreement. *Id.* There is no room for the exercise of discretion.

3

The Tenth Circuit's decision in *Natural Resources Defense Council v. McCarthy* supports this conclusion. There, the court of appeals recognized that "where an agency action is non-discretionary and mandated by law, environmental analysis 'would serve no purpose,' and NEPA does not apply." 993 F.3d 1243, 1251 (10th Cir. 2021) (quoting *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767 (2004)). In that case, a regulation provided that when a Bureau of Land Management ("BLM") officer determines that off-road vehicles are causing or will cause considerable adverse effects to certain areas, he or she "shall immediately close the areas . . . until the adverse effects are eliminated and measures implemented to prevent recurrence." *Id.* at 1252 (quoting 43 C.F.R. § 8341.2(a)). The court concluded that this language mandated BLM to lift its "temporary closure order after it has made the requisite finding." *Id.*

Just so here. If the Service makes an adequate and active finding, the Service "shall enter into a cooperative agreement," which it initially did in 1976, and "annually thereafter reconfirm" its adequate and active finding. *See* 16 U.S.C. § 1535(c)(1). The Service did so. The Acting Field Office Supervisor sent CPW a letter stating that "[b]ased on the review of the supporting documents in your renewal request, I determined that your conservation program is active and adequate." Pls.' Verified Mot. for Stay of Agency Action, Prelim. Inj. & TRO Ex. B, ECF No. 5-2. Thus, the Service had no discretion whether to renew the cooperative agreement, and the Service did so. *See id.*

Plaintiffs have brought no substantive Section 6 claim challenging the merits of the Service's conclusion that CPW's plan is adequate and active. And in *McCarthy*, the Tenth

4

Circuit concluded that the BLM's determination whether the adverse effects had been eliminated—whether the triggering criteria had been met—was a matter of judgment, not discretion subject to an environmental analysis. 993 F.3d at 1254. There is thus no discretionary action in this case subject to NEPA's environmental consideration requirements. Plaintiffs will not succeed on the merits of their claim.

Plaintiffs' claims are also unlikely to succeed for another reason: renewal of the cooperative agreement merely continues the status quo. "[W]hen federal actions maintain the status quo, there is no major federal action, and a NEPA analysis is not required." *Living Rivers v. Hoffman*, 544 F. Supp. 3d 1218, 1223 (D. Utah 2021) (citing *State of Utah v. Babbitt*, 137 F.3d 1193, 1214 (10th Cir. 1998)). Here, CPW's predecessor entered into a cooperative agreement with the Service in 1976. Verified Compl. Ex. A, ECF No. 1-1. Gray wolves have been listed as a covered species since at least fiscal year 2013. *See* Ex. 1; *see also* Ex. 5. As a result, since 2013, CPW has had a take exemption for managing wolves in Colorado. *See* Verified Compl. Ex. A at 6. It has been managing wolves in Colorado under this authority. *See* Ex. 2. The renewal of the agreement in 2023 changed nothing; it merely continued this status quo in which CPW has a take exemption for the management of wolves. Because the renewal maintains the status quo of the last decade, no NEPA analysis was required. Plaintiffs' claim lacks merit.[1]

---

[1] Because the staying or setting aside of the cooperative agreement would thus amount to a change in the status quo, Plaintiffs' requested temporary restraining order is a disfavored form of injunctive relief, despite their claims to the contrary. *See Schrier*, 427 F.3d at 1258–59.

## PLAINTIFFS COMPLAIN ONLY OF ECONOMIC HARM, NOT THE IRREPARABLE HARM REQUIRED FOR AN INJUNCTION

"It is . . . well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). While in their motion Plaintiffs point to an alleged procedural harm from the lack of any environmental review, elsewhere in their motion (and in their complaint) Plaintiffs identify the real harm they seek to avoid: economic harm. Plaintiffs write that the presence of wolves "in the Gunnison Basin and elsewhere in Colorado will cause Plaintiffs and their members significant harm resulting from impacts to other species conservation efforts, *livestock losses to predation and increased livestock stress, and high costs of conflict deterrence*." Pls.' Mot. 2, ECF No. 5 (emphasis added). They also highlight that:

> The presence of wolves imposes significant costs on the livestock industry and the communities that depend on it. The cost to implement mitigation measures to decrease conflicts between wolves and livestock can be significant while not providing permanent or guaranteed results. Such measures commonly include hiring additional range riders, deploying guard dogs, and installing barriers or electrified flagging, lights, and sound devices that may ward off wolves, among other things.

*Id.* at 13 (citations omitted); *see also* Verified Compl. ¶ 49 (complaining of increased costs on livestock and other industries); *id.* ¶ 50; *id.* ¶ 52 (Plaintiffs' members will "suffer specific negative effects due to the presence of wolves, including but not limited to predation, livestock stress, and the economic cost of wolf deterrence measures").

None of these harms are irreparable; rather, as monetary harms, they are capable of monetary compensation. Indeed, Colorado maintains a compensation program for owners whose livestock are killed by gray wolves. *See* Colorado Parks & Wildlife – Game Damage, https://cpw.state.co.us/aboutus/Pages/GameDamage.aspx (last visited Dec. 13, 2023) ("CPW may provide reimbursement for damages that are caused by Gray Wolves to livestock . . . under a separate Gray Wolf Compensation and Conflict Minimization Program authorized per C.R.S. 33-2-105.8 and Regs. #17161 - #17173."). Because Plaintiffs are complaining of potential economic harms, they do not demonstrate the irreparable harm necessary to support an injunction.[2]

Additionally, Plaintiffs' delay in bringing this case and their request for a temporary restraining order weighs against a finding of irreparable harm. Tenth Circuit "case law dictates that 'delay in seeking preliminary relief cuts against finding irreparable injury.'" *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) (quoting *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543–44 (10th Cir. 1994)).

---

[2] Plaintiffs' alleged procedural harms are not sufficient, and raise an Article III redressability problem, because even if the Court sets aside the cooperative agreement, CPW can still go forward with the reintroduction of gray wolves in Colorado pursuant to the Service's 10(j) rule. *See Endangered and Threatened Wildlife and Plants; Establishment of a Nonessential Experimental Population of the Gray Wolf in Colorado*, 88 Fed. Reg. 77,014-01 (Nov. 8, 2023). In other words, ordering the Service to undertake the procedure Plaintiffs seek to vindicate would not protect Plaintiffs' non-procedural interests– their economic harms – because the reintroduction can move forward in any event. *See Zeppelin v. Fed. Highway Admin.*, 305 F. Supp. 3d 1189, 1199 (D. Colo. 2018). Put another way, a decision staying or setting aside the cooperative agreement will not redress the ultimate injuries Plaintiffs raise: alleged harms from the reintroduction of wolves.

7

Colorado voters passed Proposition 114 in 2020.[3] Verified Compl. ¶ 32. It required the State to take steps to begin reintroductions of gray wolves by December 31, 2023. *Id.* Thus, Plaintiffs have known of this impending deadline for several years. And in both 2021 and 2022, CPW requested renewal of its cooperative agreement with the Service; the Service renewed the agreement each year without preparing an EIS. *See* Exs. 3, 4. This year, CPW requested renewal on October 17, and the Service fully approved the renewal on November 20.[4] *See* Verified Compl. ¶¶ 42, 44; *see also* Pls.' Mot. Ex. B.

What's more, Plaintiffs were involved and aware of Colorado's efforts to reintroduce wolves. Plaintiffs write that "GCSA also actively participated in the development of Colorado's Wolf Restoration and Management Plan (the "Plan") and expressed its concerns regarding the scope of impacts associated with the potential release throughout that process . . . ." Pls.' Mot. 8–9. In particular, GCSA wrote letters to the Service on September 18 and October 5, 2023, "requesting that FWS conduct NEPA analysis of the agency's decision to renew the Agreement for the 2023–2024 period." *Id.* at 9.

Thus, by November 20, Plaintiffs knew of the December 31, 2023 deadline and the cooperative agreement had again been renewed without NEPA analysis despite Plaintiffs' explicit request. They therefore should have been aware of the very claims they are now making. Yet they did not bring suit until December 11. Having waited several additional

---

[3] Proposition 114 became law in 2021. *See* C.R.S. § 33-2-105.8.

[4] The Colorado Parks and Wildlife Commission approved the State's wolf management plan on May 3, 2023. Verified Compl. ¶ 33.

weeks, Plaintiffs now claim imminent harm because the State is about to comply with the deadline in state law. But because Plaintiffs were aware of the deadline, because the cooperative agreement had already been renewed two times in the wake of Proposition 114 without NEPA analysis, and because Plaintiffs were involved in the wolf reintroduction planning process and had requested NEPA analysis, their delay of about three weeks after the most recent cooperative agreement renewal—until the very last minute before the State's reintroduction efforts—cuts against a finding of irreparable harm.

## THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST EQUITABLE RELIEF

The balance of the equities and the public interest weigh against a temporary restraining order. Plaintiffs seek to take a sledgehammer to the conservation of endangered and threatened species in Colorado. As discussed in the attached declaration of Service employee Liisa Niva (Ex. 5), the cooperative agreement is not limited to gray wolves; it applies to all threatened, ESA-listed species in Colorado and allows for funding of conservation activities as well as the management of threatened and endangered species in the State. If the Court stays or sets aside the cooperative agreement, any CPW action relating to threatened and ESA-listed species that would fall within the ESA's definition of take would be without take exemption. CPW would also no longer be eligible for Section 6 funding for threatened or endangered species in Colorado. This would harm threatened and listed species and the Service's efforts to conserve them. It would undermine the public interest in preserving and protecting threatened and listed species.

When considered alongside the facts that Plaintiffs' real complaints are economic and that they waited until unnecessarily late in the day to seek the Court's intervention, the equities and public interest weigh against setting aside the cooperative agreement that supports most of the conservation activity in Colorado under the ESA.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' request for a temporary restraining order.[5]

Respectfully submitted this 13th day of December, 2023,

> TODD KIM
> Assistant Attorney General
> Environment & Natural Resources Division
>
> By: /s/ Brian R. Herman
> BRIAN R. HERMAN
> Senior Trial Attorney
> U.S. Department of Justice
> Environment & Natural Resources Division
> Natural Resources Section
> P.O. Box 7611
> Washington, D.C. 20044
> Telephone: (202) 305-0422
> Facsimile: (202) 305-0275
> brian.herman@usdoj.gov
>
> *Attorneys for Federal Defendants*

---

[5] Plaintiffs' proposed order granting their motion for a temporary restraining order does not seek any relief from the Federal Defendants and does not include a setting aside of the cooperative agreement. *See* ECF No. 5-8. For this reason too, the Court should not issue any temporary restraining order against the Federal Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve an electronic copy on all counsel of record.

*/s/ Brian R. Herman*
BRIAN R. HERMAN
Senior Trial Attorney
